FILED

2003 OCT 22  A 10: 19

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE R. BECKER and KRAMER S. BECKER | CASE NO.: 3:02CV02209(AVC) |
| Plaintiff | |
| v. | |
| NICHOLAS H. FINGELLY REAL ESTATE, INC. and LYDIA KLYVER | OCTOBER 20, 2003 |
| Defendants And Third Party Plaintiffs | |
| v. | |
| MICHAEL SOLIMENE, PILAR SOLIMENE, MARILYN LONGDEN AND WILLIAM RAVEIS REAL ESTATE, INC. | |
| Third Party Defendants | |

**THIRD PARTY PLAINTIFF NICHOLAS H. FINGELLY REAL ESTATE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO THIRD PARTY DEFENDANTS WILLIAM RAVEIS' AND MARYLYN LONGDEN'S MOTION FOR JUDGMENT ON THE PLEADINGS**

The present action was instituted on or about December 12, 2002 by Bruce and Kramer Becker against Defendants/Third Party Plaintiffs Nicholas H. Fingelly

Real Estate, Inc. and its agent Lydia Klyver. The Plaintiff's action is founded upon an allegation that the Defendants/Third Party Plaintiffs violated the provisions of the Residential Lead-Based Hazard Reduction Act (The Act), 42 U.S.C. § 4852d in failing to provide or procure the Plaintiff's acknowledgment of their rights under the Act. Specifically, the Plaintiffs alleged that the Defendants/Third Party Plaintiffs failed to furnish the Plaintiffs with the pamphlet "Protect Your Family From Lead in the Home" and that they failed to procure the Plaintiffs' acknowledgement on the Lead Paint Disclosure form that they had received mandated information on lead paint from the Defendant/Third Party Plaintiffs. The Plaintiffs further alleged that the house they purchased contained lead and that they sustained damages as a result.

On or about April 29, 2003 the Defendants/Third Party Plaintiffs filed a Third Party Complaint against both the sellers of the property (Michael Solimene and Pliar Solimene) and the purchaser's real estate agents, Marilyn Longden and William Raveis Real Estate, Inc.

The Defendants/Third Party Plaintiff's action against Third Party Defendants, Marilyn Longden and William Raveis Real Estate, Inc. is premised on the fact that if the Third Party Plaintiffs are liable for the violation of 42 U.S.C. § 4852d by virtue of their being agents for the sellers of the property in question, then Third Party

Defendants Marilyn Longden and William Raveis are also liable for any damages suffered by the Plaintiffs because they too are agents for the sellers of the property in question.

Third Party Defendants Marilyn Longden and William Raveis Real Estate now move to dismiss the Third Party Plaintiffs' claim against them pursuant to Federal Rule of Civil Procedure 12(c) for the reason that the Third Party Plaintiffs' allegation against them are insufficient as a matter of law. The sum and substance of the Third Party Defendants' claim is that pursuant to the reported case law on the disputed issue (of which they acknowledge there is a paucity of) they cannot be considered agents of the seller as a matter of law.

The Third Party Plaintiffs base their claim against the Third Party Defendants in part on Section 35.86 of the Code of Federal Regulations. This Regulation was promulgated pursuant to the Residential Lead-Based Paint Hazards Reduction Act of 1992 ("The Act") 42 U.S.C. § 4852d. Section 35.86 defines an agent as being ". . . any party who enters into a contract with a seller or lessor, including any party who enters into a contract with a representative of the seller or lessor for the purpose of

selling or leasing target housing . . . " Section 35.86 excludes an agent for the purchaser who receives all of their compensation from the purchaser.[1]

In support of their position the Third Party Defendants cite two Federal decisions which it claims stand for the proposition that an agent for the buyer (such as the Third Party Defendants) cannot be considered an agent under the Act or its Regulations. Keegan v. the Downing Agency, Inc., 2003 WL 21210326 (D. Me. 2003) and Flowers v. ERA Unique Real Estate, Inc., 170 F. Supp. 2d 840 (N.D. ILL 2001).[2] The Keegan Decision is the decision of a Magistrate Judge while Flowers is a Decision of the District Court Judge.

Although counsel for the Third Party Defendant indicated that he was unaware of the any decision inconsistent with Keegan or Flowers, the undersigned submits that the only decision written in this district regarding this very issue is contrary to the holdings of both Keegan and Flowers. In the case of Smith v. Coldwell Banker Real Estate Services, 3:98 CV 1160 (JGM), the Court was presented with the exact issue the Third Party Defendants raised here. However, in

---

[1] The Third Party Defendants do not contend that they received all of their compensation from the purchaser. Rather, they were compensated for their services through a fee sharing arrangement with the seller's agent, the Third Party Plaintiff, who in turn received all of their compensation from the seller of the property in dispute.

[2] It does not appear that as of the present date any circuit court of appeals has addressed the issue of whether a buyer's agent whom is compensated for their services by the seller, through the seller's agent, is an agent under the Act.

the Smith case, the Court found under the exact set of facts that a buyer's agent who enters into a referral commission with a seller's agent is, in fact, an agent of the seller pursuant to 42 U.S.C. § 4852(a)(4) and 24 C.F.R. § 35.86 (a copy of said Decision appended hereto as Exhibit A).

A Rule 12(c) motion for judgment on the pleadings is filed after the pleadings are closed in a case where the facts are undisputed and a judgment on the merits is possible merely by considering the pleading's contents. See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The legal standards governing the court's consideration of a Rule 12(c) motion are the same as those standards governing its consideration of a Rule 12(b)(6) motion to dismiss. See George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2d Cir. 1977).

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir. 1991). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Still v. DeBuono, 101 F.3d 888 (2d Cir. 1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D.Conn. 1990) (citing Scheuer, 416 U.S. at 236, 94 S.Ct. 1683). In deciding such a motion, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

In the present case, there is no dispute that the Third Party Defendants entered into an agreement with a representative of the seller (i.e. the Third Party Plaintiffs) for the purpose of selling target housing and that they were compensated by the sellers or its agents for their services. In the only known decision involving this issue in this district, it was determined that under facts identical to those alleged here, that a buyer's agent who accepted compensation for the seller's agent could be held liable for damages under the Act. The Third Party Plaintiffs therefore

request that the Court deny the Third Party Defendants' Motion for Judgment on the pleadings.

THE DEFENDANT/
THIRD PARTY PLAINTIFF
Nicholas H. Fingelly Real Estate,
Inc.

BY: /s/
ROBERT G. GOLGER
Fed Bar No. CT03116
Quatrella & Rizio, LLC
One Post Road
P.O. Box 320019
Fairfield, CT  06825
(203) 255-9928

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed, postage prepaid on this 20th day of October, 2003 to all counsel and pro se parties of record as follows:

Thomas J. Sansone, Esquire
Lucy M. Romeo, Esquire
Carmody & Torrance, LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950

Dan E. Labelle
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

Mark J. Kovack, Esq.
Wake, See Dimes & Bryniczka
27 Imperial Avenue
P. O. Box 777
Westport, CT 06881-0777

Mr. Michael Solimene
Ms. Pilar Solimene
205 Winnepage Drive
Fairfield, CT 06824
(non-appearing third party defendant)

_____
ROBERT G. GOLGER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
Nov 30  3 25 PM '00

--------------------------------x

ALEX SMITH

3:98 CV 1160 (JGM)

v.

COLDWELL BANKER REAL ESTATE
SERVICES, INC. ET AL.

DATE: NOV. 30, 2000

--------------------------------x

RULING ON THIRD PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The factual history behind this litigation is set forth in considerable detail in U.S. District Judge Janet Bond Arterton's nineteen-page Ruling on Plaintiff's Motion for Summary Judgment, filed August 31, 2000 (Dkt. #73), familiarity with which is presumed here.[1] On September 1, 2000, the parties consented to trial before this Magistrate Judge. (Dkt. #74).

At issue in the pending motion is defendants Coldwell Banker Real Estate Services, Inc. ["Coldwell Banker"] and Mary Licata's Third-Party Complaint against Pilar E. Smith, filed March 10, 1999. (Dkt. #24). The Third-Party Complaint alleges that Pilar Smith acted as an agent for the seller and failed to perform her obligations as required by both the Residential Lead Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4852d ["Lead Paint Act"] and the regulations promulgated thereunder, 24 C.F.R. §§ 35.86 & 35.94, "and as such, may be responsible for all or part of the plaintiffs' claim under the federal law." (At ¶¶ 4-6). On June 8, 1999, third-party defendant Pilar E. Smith filed her answer. (Dkt. #43).

On July 24, 2000, third-party defendant Pilar E. Smith filed the pending Motion for Summary Judgment, brief in support, and Local Rule 9(c)1 Statement of Material Facts Not

---

[1] A motion for reconsideration recently was filed (Dkt. #79) and is pending before Judge Arterton.

EXHIBIT A

in Dispute ["Pilar Smith's Statement"]. (Dkts. ##67-69).[2] On August 7, 2000, defendants Coldwell Banker and Licata filed their brief in opposition and Local Rule 9(c)2 Statement of Material Facts Not in Dispute. (Dkts. #70-71).[3] Three days later, third-party defendant Pilar Smith filed her reply brief. (Dkt. #72).[4] Pursuant to an Order (Dkt. #78), on November 27, defendants Coldwell Banker and Licata filed their Supplemental Local Rule 9(c)2 Statement of Material Facts Not in Dispute ["Coldwell Banker's Supplemental Statement"]. (Dkt. #80).[5]

## I. FACTUAL SUMMARY

The following summary is based upon the parties' Local Rule 9(c) Statements of Material Facts Not in Dispute and documents cited therein, and as such, do not represent factual findings of the Court. On August 20, 1997, plaintiffs Alex Smith and Angela Smith purchased a single family house from the defendant sellers, Jonathan Whittaker and Joseph Mager, Jr., who were co-executors of the Estate of Eunice Whittaker, the property owner; the subject house is located at 52 Governors Avenue, Milford, Connecticut. (Pilar Smith's Statement and Coldwell Bankers' Supplemental Statement ¶ 1). Defendant Mager also served as the sellers' attorney. (Id. at ¶ 2). Defendant Sellers had met with defendants Coldwell Banker and Licata, and Barbara Pico, another Coldwell Banker agent, on January 9, 1997, and at that meeting, the sellers entered into an exclusive multiple listing agreement

---

[2] Six exhibits were attached to the brief (Dkt. #69): excerpts from the deposition of defendant Joseph J. Mager, Jr., taken on March 3, 1999 (Exh. 1); excerpts from the deposition of defendant Jonathan Whittaker, also taken on March 3, 1999 (Exh. 2); excerpts from the deposition of defendant Licata, taken on January 14, 1999 (Exh. 3); copy of facsimile message on July 17, 1997 (Exh. 4); excerpts from the deposition of plaintiff Alex Joseph Smith (Exh. 5); and excerpts from the deposition of plaintiff Angela Smith (Exh. 6).

[3] Attached to Coldwell Banker's Statement (Dkt. #71) was a copy of a letter, dated September 7, 1997, from Pilar E. Smith to Coldwell Banker.

[4] Two exhibits were attached: additional excerpts from the deposition of plaintiff Alex Joseph Smith (Exh. 1); and additional excerpts from the deposition of plaintiff Angela Smith (Exh. 2).

[5] Another copy of September 7, 1997 letter was attached. See note 3 supra.

2

with Coldwell Banker and the two agents. (Id. at ¶ 3). Defendant Sellers did not list the property with any other agent. (Id. at ¶ 4).

Third-party defendant Pilar Smith is the mother of plaintiff Alex Smith and is a licensed real estate broker in the State of Connecticut. (Id. at ¶ 9). Defendant Licata's only contacts with third-party defendant Pilar Smith concerned arrangements for showing the house to plaintiffs and the buyer referral. (Id. at ¶¶ 7-8). Defendant Licata and third-party defendant Pilar Smith agreed on a buyers referral fee. (Id. at ¶ 10).[6] Defendant Sellers had no contact or dealings with third-party defendant Pilar Smith at any time during the course of their listing and sale of the property at 52 Governors Avenue, Milford, Connecticut. (Id. at ¶ 5). As of the time of their depositions, neither Defendant Seller had ever heard of third-party defendant Pilar Smith. (Id. at ¶ 6). Defendants Coldwell Banker and Licata represented both sellers and buyers as dual agents. (Id. at ¶ 11).

Defendant Licata never discussed the issue of lead paint with third-party defendant Pilar Smith. (Id. at ¶ 13). Defendant Licata informed defendant Whittaker of the law regarding lead paint disclosure, when Defendant Sellers went to Coldwell Banker to list the property. (Id. at ¶ 14). Defendant Licata was aware that lead paint was present in the house because of the age of the house, which she learned from her review of the field card in the Milford land records. (Id. at ¶ 15). Defendant Whittaker ordered a professional lead paint inspection of the property in January 1997; he received such report, dated January 8, 1997, sometime

---

[6]Paragraph 10 of Pilar Smith's Statement provides in full: "Pilar Smith and Mary Licata agreed on a buyers referral fee, by which Pilar Smith was paid a referral fee from commission earned by Coldwell Banker and Mary Licata." Defendant Licata testified to such at her deposition. (Dkt. #69, Exh. 3, at 107).

Paragraph 10 of Coldwell Banker's Supplemental Statement provides in full: "Admitted in part. Initially, Mary Licata did not believe that Pilar Smith was entitled to any commission. However, Pilar Smith insisted upon it, and it was ultimately agreed." The September 7, 1997 letter attached to Coldwell Banker's Supplemental Statement indicates that Pilar Smith received a commission check from the sale of 52 Governors Lane, although she believed that she was entitled to an additional $387.75.

3

during the second week of January 1997 and the report indicates that the premises tested positive for lead paint. (Id. at ¶ 16). Defendant Whittaker informed defendant Licata that he received the report, but did not inform plaintiffs of the report; he did not deliver a copy of the report to anyone until he gave a copy to defendant Licata in early August, approximately two weeks before the closing. (Id. at ¶ 17). Defendant Licata did not give a copy of the lead paint report to plaintiffs until the closing on August 20, 1997, and did not give a copy of the report to anyone else. (Id. at ¶ 18). Third-party defendant Pilar Smith was not present at, and did not participate in, the closing. (Id. at ¶ 19).

## II. DISCUSSION

The standard for summary judgement is well established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issues of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

42 U.S.C. § 4852d(a)(1)(A)-(C) order the promulgation of regulations which require

4

that, before a purchaser is obligated under any contract to purchase target housing, the seller shall provide the purchaser with a lead hazard information pamphlet, disclose to the purchaser the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing, provide to the purchaser any lead hazard evaluation report available to the seller, and permit the purchaser a ten-day period (unless otherwise agreed) to conduct a risk assessment or inspection for the presence of lead-based paint hazards. Such regulations are found at 24 C.F.R. §§ 35.88 & 35.90. 42 U.S.C. § 4852d(a)(2)(A)-(C) further order the promulgation of regulations which require that every contract for the purchase and sale of target housing contain a Lead Warning Statement and a statement signed by the purchaser that the purchaser has read the Lead Warning Statement and understands its contents, received a lead hazard information pamphlet, and had a ten-day opportunity (unless otherwise agreed) to conduct a risk assessment or inspection for the presence of lead-based paint hazards. These regulations are found at 24 C.F.R. § 35.92.[7]

42 U.S.C. § 4852d(b)(3), entitled "Civil Liability," provides: "Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser . . . in an amount equal to 3 times the amount of damages incurred by such individual." See also 24 C.F.R. § 35.96(c)(utilizing same language).

An agent's obligation under the Lead Paint Act is set forth in 42 U.S.C. § 4852d(a)(4) as follows: "Whenever a seller . . . has entered into a contract with an agent for the purpose of selling . . . a unit of target housing, the regulations promulgated under this section shall require the agent, on behalf of the seller . . . , to ensure compliance with the requirements of this section." 24 C.F.R. § 35.94(a) in turn provides:

> Each agent shall ensure compliance with all requirements of this

---

[7] See Sipes v. Slaughter, 89 F. Supp. 2d 1199 (D. Kan. 2000)(regarding implementation of regulations); Sweet v. Sheahan, No. 97 CV 1666, 1999 WL 1011921 (N.D.N.Y. Nov. 5, 1999)(same).

subpart. To ensure compliance, the agent shall:

> (1) Inform the seller . . . of his/her obligations under §§ 35.88, 35.90, and 35.92.
>
> (2) Ensure that the seller . . . has performed all activities required under §§ 35.88, 35.90, and 35.92, or personally ensure compliance with the requirements of §§ 35.88, 35.90, and 35.92.

For purposes of 42 U.S.C. §4852d, "agent" is defined as follows:

> Agent means any party who enters into a contract with a seller . . ., including any party who enters into a contract with a representative of the seller . . ., for the purpose of selling . . . target housing. This term does not apply to purchasers or any purchaser's representative who receives all compensation from the purchaser.

24 C.F.R. § 35.86.

The simple question presented in this motion is whether Pilar Smith is an "agent" under 42 U.S.C. § 4852d(a)(4), and 24 C.F.R. §§ 35.94 & 35.86? Under the undisputed facts in this case, it appears that Pilar Smith is such an agent. She entered "into a contract with a representative of the seller . . . for the purpose of selling . . . target housing," namely the referral commission agreement with Coldwell Banker and Licata. (Pilar Smith's Statement & Coldwell Banker's Supplemental Statement ¶10; Dkt. #69, Exh. 4; Dkt. #80, Exh.). Moreover, she did not receive all her compensation from the purchaser, but rather through the sellers. (Dkt. #69, Exh. 4; Dkt. #80, Exh.).

### III. CONCLUSION

Accordingly, for the reasons stated above, third-party defendant Pilar E. Smith's Motion for Summary Judgment (Dkt. #67) is <u>denied</u>.

Dated at New Haven, Connecticut, this 30th day of November, 2000.

Joan Glazer Margolis
United States Magistrate Judge

6